### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA

CASE NO: 22-cv-80159-CANNON/REINHART

STERLING TACKLE LLC

     Plaintiff,

vs.

TORMENTER FISHING PRODUCTS INC.

     Defendant.

_____ /

### DEFENDANT'S MOTION TO DISMISS COMPLAINT

Defendant, Tormenter Fishing Products Inc. ("Defendant" or "Tormenter Fishing Products"), by and through its undersigned counsel, and pursuant to Fed. R. Civ. P. 12(b)(6), hereby moves to dismiss the Complaint [DE 1] filed by Plaintiff, Sterling Tackle LLC ("Plaintiff or "Sterling Tackle"), and in support thereof states:

I.     **INTRODUCTION.**

The Complaint should be dismissed for failure to state a cause of action under Rule 12(b)(6) because the asserted patent does not have any claims that read on the Defendant's accused products and Plaintiff clearly and unmistakably surrendered claim scope that it is now trying to recapture to assert against the Defendant.

This patent infringement lawsuit has been brought in bad faith, because Plaintiff knows that the patent-in-suit, U.S. Patent No. 11,044,897, entitled "Fishing Lure Trolling Spreader Bar," (the "'897 patent"), does not include patent claims that "read on" or cover Defendant's accused products. As more fully explained in this motion, Plaintiff's Complaint, does not, *and cannot*, state a cause of action for patent infringement based upon the very allegations identifying the

accused products contained in the Complaint.  Specifically, Plaintiff alleges that Defendant's "Sidewinder Tracker Bars," also called "Sidewinder Directional Bars," (the "accused products") infringe independent claims 1 and 13 of the '897 patent – but the photographs contained in Plaintiff's Complaint show that the accused products do not practice or meet each of the limitations of claims 1 and 13 of the '897 patent.  Claims 1 and 13 in the '897 patent require that the "first bait lures" attach to the ends of two "rods."  *See* DE 1-1, Exhibit A of Complaint, the '817 patent, col. 13, ll: 22-27; col. 14, ll: 43-48. The allegations of the Complaint show the "first bait lures" of the accused products are not attached to the "rods," but rather, show them attached to monofilament lines and swivels (interfering structures that lie between the "first bait lures" and the "rods").  Plaintiff's allegations in the Complaint are actually inconsistent with and contradict infringement as defined by the claims of the '897 patent. On this basis alone, Plaintiff's Complaint should be dismissed with prejudice.   No "claim construction" is required to observe the photographs in the Complaint and conclude that there is no infringement.

Additionally, the accused products cannot infringe the '897 patent because, during prosecution, the Plaintiff expressly and clearly disavowed any interfering structures between the "first bait lures" and the "rods". Specifically, in its "Response to Non-Final Office Action" submitted to the United States Patent and Trademark Office ("USPTO"), dated February 17, 2021 ("Response to Office Action"), Plaintiff amended the claims at issue of the '897 patent to overcome the prior technology cited by the patent examiner, and in its arguments, made the clear assertion that **"there is no interfering structure between the . . .  first bait lures and the . . . rods."** *See* **Exhibit 2[1]**, attached hereto, Response to Non-Final Office Action, at 10 (emphasis added).

---

[1] As explained below, the history of the negotiations between the patent applicant and the USPTO, called the "prosecution history" of the patent, is considered part of the *intrinsic* record, and the

Thus, Plaintiff, in bad faith, has filed this frivolous lawsuit against Defendant – disregarding its own statements to the USPTO and with full knowledge that the "lines" between the "first bait lures" and the "rods" in the accused products are "interfering" structures, which Plaintiff clearly and unmistakably surrendered and knew was not covered by the patent. This Court should dismiss Plaintiff's Complaint with prejudice as more fully discussed below.

## II.   MEMORANDUM OF LAW.

### A.   Plaintiff Fails to State a Plausible Claim Because Plaintiff's Allegations are Actually Inconsistent With and Contradict Infringement.

The photographs of the accused products that Plaintiff inserted into its allegations of infringement belie its conclusory statements that there is infringement. Although the accused products contain "first bait lures," they are not "attached" to "rods" at all. The photographs clearly demonstrate that the accused products contain first bait lures "attached" to monofilament "lines." Although Federal Rule of Civil Procedure 8(a)(2) requires a plausible short and plain statement of a plaintiff's claim, a plaintiff's "obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555(2007) (internal quotation marks omitted) (brackets in original). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Accordingly, a plaintiff cannot assert a plausible claim for infringement under the *Iqbal/Twombly* standard by reciting the claim elements and merely concluding that the accused product has those elements." *Bot M8 LLC v. Sony Corp. of Am.*, No. 2020-2218, 2021 U.S. App. LEXIS 20624, at *18-19 (Fed. Cir. July 13, 2021).

---

Court may consider this record when determining a motion to dismiss for failure to state a claim for patent infringement.

"To prove literal infringement, a plaintiff must show that the accused device contains each and every limitation of the asserted claims." *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 702 F.3d 1351, 1358 (Fed. Cir. 2012) (citing *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1301 (Fed. Cir. 2011)); *Blue Water Innovs., LLC v. Fettig*, Civil Action No. 18-60671-Civ-Scola, 2019 U.S. Dist. LEXIS 73605, at *4 (S.D. Fla. Mar. 8, 2019) (To establish patent infringement, "the allegedly infringing product must practice all elements of a patent claim.") (quoting *Raptor, LLC v. Odebrecht Constr.*, No. 17-21509, 2017 U.S. Dist. LEXIS 97440, at *6 (S.D. Fla. June 22, 2017) (Altonaga, J.)).

"[A] patentee may subject its claims to early dismissal by pleading facts that are inconsistent with the requirements of its claims." *Bot M8 LLC*, 2021 U.S. App. LEXIS 20624, at *1. Where "the factual allegations are actually inconsistent with and contradict infringement, they are . . . insufficient to state a plausible claim." *Id.* at *22. "[I]t is possible that, in pleading its claims, a plaintiff may find it has pleaded itself out of court." *Id.* at *23 (affirming the district court's determination that the patentee's allegations did not plausibly allege infringement as to one of the patents at issue because the patentee's allegations were inconsistent with and contradicted infringement). Here, Plaintiff fails to state a plausible claim because Plaintiff's allegations are inconsistent with and contradict infringement as shown in the photographs in the Complaint.

Plaintiff makes conclusory allegations that Defendant infringes because the accused products purportedly contain each and every limitation of claims 1 and 13 of the '897 patent:

> 22.     Tormentor's sidewinder directional bars contain each and every feature of claim 1 of the '897 patent.  Below is a table comparing a Tormentor sidewinder directional bar product to claim 1 of the '897 patent:

> 23.    Tormentor's sidewinder directional bars contain each and every feature of claim 13
> of the '897 patent.  Below is a table comparing a Tormentor sidewinder directional bar product
> to claim 13 of the '897 patent:

[DE 1 ¶¶22, 23 (tables omitted)].   The photographs of the accused products in Plaintiff's tables

contradict infringement, because Claims 1 and 13 of the '897 patent require that the "first bait

lures" be "attached to a distal end of the first rod at [the first bait lures] head end," and "attached

to a distal end of the second rod at its head end." (quoting from the claim limitations of independent

claims 1 and 13, copied and pasted below):

| Claim 1 | Claim 13 |
|---|---|
| The invention claimed is:<br>1. A trolling spreader bar comprising:<br>an elongated central body;<br>a spreader bar that extends laterally outward from the elongated central body, wherein the spreader bar comprises a first rod and a second rod that extend laterally from the elongated central body;<br>a keel that extends from a ventral surface of the elongated central body at an angle relative to a longitudinal axis of the elongated central body, such that, when trolling in a body of water at or near a surface of the body of water, the elongated central body is guided laterally outwardly from a direction of travel of the trolling spreader bar while trolling;<br>two first bait lures, each of the two first bait lures having a head end and a tail end, wherein one first bait lure of the two first bait lures is attached to a distal end of the first rod at its head end, and another first bait lure of the two first bait lures is attached to a distal end of the second rod at its head end; and<br>a plurality of bait lures interconnected to each of the two first bait lures by a line extending between a tail end of a preceding bait lure and a head end of a succeeding bait lure;<br>wherein at least one of the two first bait lures further comprises a counterweight, wherein the counterweight is carried within a body of the at least one of the two first bait lures. | 13. A trolling spreader bar comprising:<br>an elongated central body;<br>a spreader bar that extends laterally outward from the elongated central body, wherein the spreader bar comprises a first rod and a second rod that extend laterally from the elongated central body;<br>a keel that extends from a ventral surface of the elongated central body at an angle relative to a longitudinal axis of the elongated central body, such that, when trolling in a body of water at or near a surface of the body of water, the elongated central body is guided laterally outwardly from a direction of travel of the trolling spreader bar while trolling;<br>two first bait lures, each of the two first bait lures having a head end and a tail end, wherein one first bait lure of the two first bait lures is attached to a distal end of the first rod at its head end, and another first bait lure of the two first bait lures is attached to a distal end of the second rod at its head end; and<br>a plurality of bait lures interconnected to each of the two first bait lures by a line extending between a tail end of a preceding bait lure and a head end of a succeeding bait lure;<br>wherein at least one of the two first bait lures is a teaser bait lure having two wings extending laterally from the body of the teaser bait lure, wherein the teaser bait lure comprises dense plastic material. |

*See* DE 1-1, the '897 patent, col. 13, ll:8-35; col. 14, ll:30-56 (red boxes around the fourth major

claim limitation in each claim).

Thus, claim 1 of the '897 patent requires one "first bait lure" to be "*attached* to a distal end of the first *rod* at its head end", (col. 13, ll: 23-25), and another "first bait lure" be "*attached* to a distal end of the second *rod* at its head end[.]" (col. 13, ll: 25-27). Likewise, claim 13 of the '897 patent requires that the "first bait lure" "is *attached* to a distal end of the first *rod* at its head end", (col. 14, ll: 44-46), and the other "first bait lure" "is *attached* to a distal end of the second *rod* at its head end[.]" col. 14, ll:46-48. An example of this configuration is illustrated in Figure 1 of the '897 patent:



The "first bait lures" are represented by reference numeral 26. The two "rods" are represented by numerals 18, 20. In this figure, the head end of the "first bait lure" 26 is attached to the distal end of "rod" 20 and "rod" 18. There is no "line" between these elements, such as the lines 28 shown in the subsequent "bait lures."

Importantly, Claims 1 and 13 also require, "a plurality of bait lures *interconnected* to . . . first bait lures by a *line*." Thus, within claims 1 and 13 themselves, it is clear that a "rod" is not the same as a "line" and the word "attached" is not the same as "interconnected."

The distinctions between such terms matter, because Plaintiff fails to, and cannot, establish a claim for infringement here, given that the accused products' "first bait lures" are *attached* to

"*lines*" at their heads – **_not_** to the distal ends of the purported first and second *rods*. For example, the relevant portion of Plaintiff's claim chart, (DE 1 at p. 9), copied below, clearly and unmistakably shows the head end of the accused product's "first bait lure" attached to a *line* – **_not_** the distal end of a purported first *rod*:



Below are zoomed-in areas from the photograph above, showing the "line" between the "first bait lure" and the distal end of the "rod."



[DE 1 at p. 9 (red arrows in original; black circle, black arrows and text added)]. Likewise, in

Plaintiff's claim chart, the head end of the accused product's other "first bait lure" is attached to a

"line" and **_not_** the distal end of the purported second "rod," as is shown below:



[DE 1 at p. 9 (red arrows in original; black circle, black arrows and text added)]. Similarly, for claim 13, the "first bait lures" of the accused product, as is shown in the claim chart, are attached to *lines* and ***not*** to the distal ends of any "*rods*":



Below are zoomed-in areas from the photograph above, showing the "line" between the "first bait lure" and the distal end of the "rod."



[DE 1 at p. 14 (red arrows in original; black circles added)].   In fact, throughout Plaintiff's Complaint, the accused products' first bait lures clearly and unmistakably attach to *lines* – and never attach to the distal ends of any *rod*, as is further shown below:



[DE 1 at p. 6 (red arrows in original; black circles, black arrows and text added)].



[DE 1 at p. 10].



[DE 1 at p. 11; *See also id.* at 15-18].  In every one of Plaintiff's photographs of the accused products in the Complaint, the first bait lures are attached to *lines* and ***not to*** any *rods*.  This is fatal to Plaintiff's claim of infringement because claims 1 and 13 require the first bait lures to be "attached" to the distal ends of the "rods," not to "lines."  Because the accused products' "first bait lures" attach to *lines* – no claim for infringement is plausible.

Although Plaintiff improperly[2] compares its products to the accused products in the Complaint, Plaintiff's comparison between the parties' commercial products confirms that Plaintiff does not, *and cannot*, state a claim for patent infringement because the accused products' "first bait lures" connect to "lines" and not to the distal ends of any "rods":

---

[2] Infringement is not determined by "comparison between commercial products sold by the parties." *AquaTex Indus. v. Techniche Sols.*, 479 F.3d 1320, 1328 (Fed. Cir. 2007); *Amstar Corp. v. Envirotech Corp.*, 730 F.2d 1476, 1481 (Fed. Cir. 1984).



[DE 1 at p. 17 (black circles, black arrows and text added)].  As shown in the above comparison between the commercial products, the Plaintiff's "first bait lures" *attach* to the distal ends of the "*rods"*.  Whereas, the Defendant's "first bait lures" *attach* to "*lines*."  Thus, as shown throughout Plaintiff's Complaint, the head ends of the accused products' "first bait lures" attach to "*lines*" – *not to* any "*rod*."  Thus, Plaintiff, through the use of photographs to allege that the accused products purportedly infringe claims 1 and 13 of the '897 patent, *actually* demonstrates facts that contradict infringement.  Accordingly, the Court should dismiss the Complaint, with prejudice, because Plaintiff does not and cannot state a cause of action for patent infringement.

**B.**   **During Prosecution of the '897 Patent before the U.S. Patent & Trademark Office, Plaintiff Expressly and Clearly Disavowed that the '897 Patent Covers an "Interfering Structure" Between the "First Bait Lures" and the "Rods."**

Plaintiff made statements in its Response to Office Action, (Ex. 2 at 10), during the "prosecution history" of the '897 patent which clearly and unmistakably surrendered claim scope

and contradict the allegations in the Complaint. "In ruling on a 12(b)(6) motion, a court need not 'accept as true allegations that contradict matters properly subject to judicial notice or by exhibit…'" *Secured Mail Sols., LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017) (quoting *Anderson v. Kimberly-Clark Corp.*, 570 F. App'x 927, 932 (Fed. Cir. 2014) (internal citations omitted) (holding that "[i]n evaluating a Rule 12(b)(6) motion, a court may rely on documents outside the pleadings if they are integral to the plaintiff's claims and their authenticity is not disputed. . . . The court may also rely on matters subject to judicial notice.") (unpublished decision)); *See also U.S. ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 811 (11th Cir. 2015); *Standard Havens Prods., Inc. v. Gencor Indus., Inc.*, 897 F.2d 511, 514 n.3 (Fed. Cir. 1990) (appropriate to take judicial notice of PTO correspondence which is part of the public record); *Hoganas AB v. Dresser Indus.*, 9 F.3d 948, 954 n.27 (Fed. Cir. 1993).  Although "[c]ourts must liberally construe and accept as true allegations of fact in the complaint and inferences reasonably deductible therefrom, [a court] need not accept factual claims that are internally inconsistent; facts which run counter to facts of which the court can take judicial notice; conclusory allegations; unwarranted deductions; or mere legal conclusions asserted by a party." *Response Oncology v. MetraHealth Ins. Co.*, 978 F. Supp. 1052, 1058 (S.D. Fla. 1997).

Here, during the process of applying for the '897 patent, Plaintiff participated in extensive negotiations with the patent examiner at the USPTO in order overcome several rejections of the patent application that eventually issued as the '897 patent.  These rejections and subsequent amendments to the patent application, including to the "claims" of the patent application, are part of the "intrinsic" evidence of the patent, and this Court may rely on statements made by the Plaintiff to the USPTO to determine a motion to dismiss for failure to state a cause of action under Rule 12(b)(6). *See Amgen Inc. v. Coherus BioSciences, Inc.,* 931 F.3d 1154, 1159 (Fed. Cir. 2019)

(affirming the dismissal of the complaint on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), explaining "[w]e agree with the district court that, during prosecution of the '707 patent, Amgen clearly and unmistakably surrendered salt combinations other than the particular combinations recited in the claims.").  Here, Plaintiff was forced to amend the claims of the '897 patent to overcome rejections of the claims on the basis of prior art patents that specifically showed spreader bars having bait lures attached to lines that were then connected to the ends of the spreader bar. For example, the patent examiner cited U.S. Patent No. 4,893,432, titled "Fishing Jig," that discloses a spreader bar (reference no.16) with several lures (M2, M3 and M4) attached to lines, which are then interconnected to the spreader bar through swivels (32, 36):



**FIG. 3**

The patent examiner also cited to similar technology from 1945 and 1989:



In order to overcome these, and several other prior art patent references, Plaintiff, through the same counsel that filed the Complaint, amended its independent claim 1 and added new independent claim 23 (which later issued at independent claim 13) as follows (added limitations are <u>underlined</u>, in original):

**LISTING OF CLAIMS:**

1.      (Currently Amended): A trolling spreader bar comprising:

an elongated central body;

a spreader bar that extends laterally outward from the elongated central body, wherein the spreader bar comprises a first rod and a second rod that extend laterally from the elongated central body; and

a keel that extends from a ventral surface of the elongated central body at an angle relative to a longitudinal axis of the elongated central body, such that, when trolling in a body of water at or near the surface of the body of water, the elongated central body is guided laterally outwardly from the direction of travel of the trolling spreader bar while trolling; trolling

two first bait lures, each first bait lure having a head end and a tail end, wherein one first bait lure is attached to a distal end of the first rod at its head end, and another first bait lure is attached to a distal end of the second rod at its head end; and

a plurality of bait lures interconnected to each first bait lure by a line extending between a tail end of a preceding bait lure and a head end of a succeeding bait lure;

wherein at least one first bait lure further comprises a counterweight, wherein the counterweight is carried within a body of the first bait lure.


21.     (New): A trolling spreader bar comprising:

an elongated central body;

a spreader bar that extends laterally outward from the elongated central body, wherein the spreader bar comprises a first rod and a second rod that extend laterally from the elongated central body;

a keel that extends from a ventral surface of the elongated central body at an angle relative to a longitudinal axis of the elongated central body, such that, when trolling in a body of water at or near the surface of the body of water, the elongated central body is guided laterally outwardly from the direction of travel of the trolling spreader bar while trolling;

two first bait lures, each first bait lure having a head end and a tail end, wherein one first bait lure is attached to a distal end of the first rod at its head end, and another first bait lure is attached to a distal end of the second rod at its head end; and

a plurality of bait lures interconnected to each first bait lure by a line extending between a tail end of a preceding bait lure and a head end of a succeeding bait lure;

wherein at least one first bait lure is a teaser bait lure having two wings extending laterally, wherein the teaser bait lure comprises dense plastic material.

(Response to Office Action, Ex. 2 at 4, 7 (excerpted pages from the prosecution history of the '897 patent); *see also* Declaration of Ana Buchenhorner, attached hereto, attesting that these publicly available documents were downloaded by the publicly-accessible USPTO government website. The Response to Office Action is integral to Plaintiff's claims and its authenticity cannot be disputed because it is filed at the USPTO and part of the public record.  Further, the Court may take judicial notice of the "Response to Non-Final Office Action" because it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201 (b)(2)[3].

Thus, in both claims, the following language was added:

"two first bait lures, each first bait lure having a head end and a tail end, wherein one first bait lure is attached to a distal end of the first rod at its head end, and another first bait lure is attached to a distal end of the second rod at its head end."

(Response to Office Action, Ex. 2 at 4, 7).  Notably, in his accompanying remarks regarding independent claims 1 and 21 (now claim 13), counsel for Plaintiff makes clear that, as amended to overcome the prior art rejection, the independent claims require, inter alia, "two first bait lures attached at their head ends to distal ends of the first rod and second rods **(i.e., there is no interfering structure between the head ends of the first bait lures and the distal ends of the first and second rods)**". *See* Response to Office Action, Ex. 2 at 10 (emphasis added). Thus, Plaintiff, through its patent counsel, deliberately and specifically amended the independent claims to add the direct-attachment limitation in order to avoid the prior art lures made of record by the patent examiner. Critically, Plaintiff also clearly and unequivocally disavowed that the two independent claims covered trolling lures that have "interfering structure between the head ends

---

[3] Defendant respectfully requests that the Court take judicial notice of these patent prosecution history documents.

of the first bait lures and distal ends of the first and second rods." *See Amgen Inc. v. Coherus BioSciences, Inc.,* 931 F.3d 1154, 1159 (Fed. Cir. 2019) (dismissing based on disavowal of claim coverage). *See also Rembrandt Wireless Techs., LP v. Samsung Elecs. Co.*, 853 F.3d 1370, 1376 ("Here, the clearest statement in the intrinsic record regarding the meaning of the 'different types' limitation is the descriptive statement the applicant made to the examiner when he inserted the limitation into the claims … the term 'i.e.' is Latin for id est, which means 'that is.'").

Furthermore, to confirm that the "attachment" limitation was added to avoid the prior art, the patent examiner, in her "Reasons for Allowance" that accompanied the Notice of Allowance, attached hereto as **Exhibit 3**, clearly explains that this specific limitation distinguishes the claimed inventions over specific prior art references. Notice of Allowance, Ex. 3 at 8-9.  According to the patent examiner, U.S. Patent No. 2,462,290A to Sauvey, as well as other references, such as: U.S. Patent No. 5,189,827 A to Mrozek, U.S. Patent No. 0074587 to Smith, U.S. Patent No. 1,352,979 A to Lawrence, U.S. Patent No. 3,878,636 A to George, and U.S. Patent No. 244,969 A to Eichendorff all "fail to teach the body of a first bait lure attached at its head end to the distal end of the first and second rod." *Id.* at 8. Referring to U.S Patent No. 4,794,721 A to Rowe Jr., U.S. Patent No. 4,893,432 A to Rosengrant, U.S.Patent No. 6,000,166 A to Kirkpatrick, and U.S. Patent No. 4,998,374 A to Barnett, the patent examiner states that "these lures are not directly connected to the distal ends at their head ends, and instead utilize interfering structure such as lines and loops to provide the connections." *Id.*  Further referring to U.S. Patent No. 9,003,690 B1 to Rye and U.S. Patent No. 8,978,289 B2 to Willis, the examiner states, "the head ends of these lures are not directly connected, even if it appears close, since they have interfering loop structures which connect them to their respective bar end." *Id.*; *See Arendi S.A.R.L. v. Google LLC*, 882 F.3d 1132 (Fed. Cir.

2018) ("[E]xaminer's 'Reasons for Allowance' made clear that the examiner and the applicant understood what the applicant had changed.").

The prosecution history of the '897 patent demonstrates that Sterling Tackle intentionally and deliberately narrowed the scope of the claimed inventions in order to avoid the prior art, thereby surrendering the territory that is embodied by Tormenter Fishing Products' accused products. Specifically, Sterling Tackle, as well as the prosecuting patent attorney, have had direct knowledge that any product that included any "interfering structure between the head ends of the first bait lures and the distal ends of the first and second rods" could not possibly infringe any claim of the '897 patent. Yet, Sterling Tackle filed suit against Tormenter Fishing Products based on lures that include a structure between the spreader rod and the first baits.

A patent applicant, such as Sterling Tackle, may disavow the scope of what the patent covers through the patent itself, through amendments made to the patent claims, through statements made to the U.S. Patent & Trademark Office, or through a combination of these. *See Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323-24 (Fed. Cir. 2003); *Saffran v. Johnson & Johnson*, 712 F.3d 549, 559 (Fed. Cir. 2013); *Techtronic Indus. Co. v. ITC*, 944 F.3d 901, 907 (Fed. Cir. 2019); *Data Engine Techs. LLC v. Google LLC*, No. 2021-1050, 2021 U.S. App. LEXIS 25705, at *13-14 (Fed. Cir. Aug. 26, 2021). "Prosecution history disclaimer plays an important role in the patent system. It 'promotes the public notice function of the intrinsic evidence and protects the public's reliance on definitive statements made during prosecution.'" *Data Engine Techs. LLC v. Google LLC*, No. 2021-1050, 2021 U.S. App. LEXIS 25705, at *13-14 (Fed. Cir. Aug. 26, 2021) (quoting *Biogen Idec, Inc. v. GlaxoSmithKline LLC*, 713 F.3d 1090, 1095 (Fed. Cir. 2013) (quoting *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1324 (Fed. Cir. 2003))).

Accordingly, Plaintiff's allegations are inconsistent with and run counter to the statements it made in its Response to Office Action to overcome multiple rejections of its claimed inventions based on the prior art – which included a line or leader between the bait lure and the spreader rod – cited against Plaintiff by the patent examiner. In order to overcome this prior art, Plaintiff expressly stated that "there is no interfering structure between the . . . first bait lures and the . . . rods." Response to Office Action, Ex. 2 at 10. This is a material limitation of claims 1 and 13 of the '897 patent. Plaintiff intentionally and deliberately narrowed the scope of the claimed inventions in order to avoid the prior art. Plaintiff now brings this baseless lawsuit against Defendant when all of the accused products' first bait lures are attached to "lines" and such "lines" would necessarily be "interfering structures between" the first bait lures and the rods – and such interfering structures are clearly visible in the photographs of the accused products shown in the Complaint (DE 1), as explained in Section IIA above.  Because Defendant has disavowed that an element of its patent claims includes an "interfering structure" between the first bait lures and the two rods, Plaintiff does not and cannot now recapture what it has dedicated to the public. Plaintiff cannot state a plausible claim when all of the accused products contain an "interfering structure" –i.e., a line– between the first bait lures and the two rods. Accordingly, Defendant does not infringe each and every feature of claims 1 and 13 of the '897 patent because the accused products' first bait lures do not attach to rods. Rather, the accused products first bait lures attach to lines – which is exactly what Plaintiff clearly and unmistakably disavowed during prosecution of the '897 patent.

## III.    CONCLUSION.

Defendant, Tormenter Fishing Products, Inc., respectfully requests that the Court dismiss the Complaint (DE 1) with prejudice, and grant such further relief as the Court deems just and proper.

## <u>REQUEST FOR HEARING PER LOCAL RULE 7.1(B)</u>

Defendant respectfully requests that the Court grant a hearing on its Motion to Dismiss, because the patent-related issues raised in Defendant's motion can be understood more readily using demonstrative exhibits, including, inter alia, a summary tutorial on the technology and a more detailed explanation regarding the Plaintiff's statements to the U.S. Patent & Trademark Office in the prosecution history of the patent in suit.  Defendant requests a 2-hour hearing to give the parties time to make presentations and answer any questions from the Court.

Dated: April 22, 2022

Respectfully submitted,

By: s/William R. Trueba, Jr.
William R. Trueba, Jr.
Florida Bar No. 117544
wtrueba@lex188.com
Roberto M. Suarez
Florida Bar No. 95762
rsuarez@lex188.com
Darlene Barron
Florida Bar no. 108873
dbarron@lex188.com
Tiffany-Ashley Disney
Florida Bar No. 124978
tdisney@lex188.com
TRUEBA & SUAREZ, PLLC.
7480 Bird Road, Suite 601
Miami, Florida  33155
Telephone: (305) 482-1001
Facsimile: (786) 516-2826

*Attorneys for Defendant, Tormenter Fishing Products Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 22, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By:    s/William R. Trueba, Jr.
       William R. Trueba, Jr.
       Florida Bar No. 117544

## SERVICE LIST

*Sterling Tackle LLC v. Tormenter Fishing Products Inc.*, Case No. 22-cv-80159-
Cannon/Reinhart
United States District Court, Southern District of Florida

Jennifer Olmedo-Rodriguez, Esq.
Fla. Bar No.: 605158
BUCHANAN INGERSOLL & ROONEY PC
One Biscayne Tower
2 S Biscayne Blvd Ste. 1500
Miami, FL 33131-1822
Telephone: (305) 347-4080
Facsimile: (305) 347-4089
Email: jennifer.olmedo-rodriguez@bipc.com

*Attorneys for Plaintiff, Sterling Tackle LLC*
***Via CM/ECF***

Jason Camillo (PA313643)
(admitted *pro hac vice*)
BUCHANAN INGERSOLL & ROONEY PC
Union Trust Building
501 Grant Street, Suite 200
Pittsburg, PA 15219-4413
Telephone: (412) 392-1696
Facsimile: (412) 562-1041
Email: jason.camillo@bipc.com

*Attorneys for Plaintiff, Sterling Tackle LLC*
***Via CM/ECF***

Ralph G. Fischer (PA200793)
 (admitted *pro hac vice*)
BUCHANAN INGERSOLL & ROONEY PC
Union Trust Building
501 Grant Street, Suite 200
Pittsburgh, PA 15219-4413
Telephone: (412) 392-2121
Facsimile: (412) 562-1041
Email: ralph.fischer@bipc.com

*Attorneys for Plaintiff, Sterling Tackle LLC*
***Via CM/ECF***

William R. Trueba, Jr.
Florida Bar No. 117544
wtrueba@lex188.com
Roberto M. Suarez
Florida Bar No. 95762
rsuarez@lex188.com
Darlene Barron
Florida Bar no. 108873
dbarron@lex188.com
Tiffany-Ashley Disney
Florida Bar No. 124978
tdisney@lex188.com
TRUEBA & SUAREZ, PLLC.
7480 Bird Road, Suite 601
Miami, Florida 33155
Telephone: (305) 482-1001
Facsimile: (786) 516-2826

*Attorneys for Defendant Tormenter*
*Fishing Products Inc.*
***Via CM/ECF***